[Cite as *In re Application of Columbus S. Power Co.*, 128 Ohio St.3d 402, 2011-Ohio-958.]

IN RE APPLICATION OF COLUMBUS SOUTHERN POWER COMPANY ET AL.;
COLUMBUS SOUTHERN POWER COMPANY, APPELLANT; PUBLIC UTILITIES
COMMISSION ET AL., APPELLEES.

[Cite as *In re Application of Columbus S. Power Co.*,
128 Ohio St.3d 402, 2011-Ohio-958.]

*Public utilities — R.C. 4928.17(E) — Utility preserved its right to appeal denial of request for authority to sell generation facilities — Commission's decision to deny request to sell generation facilities and to deny cost recovery associated with facilities was not unreasonable or unlawful.*

(No. 2009-2298 — Submitted February 2, 2011 — Decided March 9, 2011.)

APPEAL from the Public Utilities Commission, No. 08-917-EL-SSO.

_____

O'CONNOR, C.J.

{¶ 1} Columbus Southern Power Company ("CSP") appeals from the Public Utilities Commission's denial of its request for authority to sell or transfer two generation facilities, as well as its decision to deny cost recovery associated with the facilities. The commission defends its decision on the merits, and it also asserts that we lack jurisdiction to consider this matter because CSP failed to preserve these issues for appellate review.

{¶ 2} We have jurisdiction in this matter; CSP timely applied for rehearing and thereby preserved its right to appeal. On the merits, however, CSP has not shown that the commission's decision was unreasonable or unlawful. Therefore, we affirm.

**I. Relevant Background**

{¶ 3} As amended in 2008, R.C. 4928.17(E) requires an electric-distribution utility to "obtain[] prior commission approval" before it may "sell or

transfer any generating asset it wholly or partly owns." Before it was amended, this section allowed a utility to "divest itself of any generating asset at any time without commission approval." Am.Sub.S.B. No. 3, 148 Ohio Laws, Part IV, 7962, 8020.

{¶ 4} On July 31, 2008, CSP (along with its sister utility, Ohio Power Company) filed an application seeking commission approval of an electric security plan. See R.C. 4928.143. As part of that application, CSP sought "authority to sell or transfer two recently acquired generating facilities." Although requesting authority to sell, the company made clear that it had "no immediate plan to sell or transfer those facilities."

{¶ 5} The application did not include a request for increased rates to recover the costs of operating these facilities. Later in the proceedings, however, in rebuttal testimony, a CSP witness stated that cost recovery would be appropriate as an alternate remedy: "If the Companies through a Commission order are prohibited from transferring these plants or entitlements then any expense not recovered by [a particular charge] should be recovered in [a different] rate."

{¶ 6} In its initial order, the commission denied the request for authority to transfer the facilities, finding it premature. But the commission granted CSP the alternative relief of cost recovery—roughly $51 million a year. Apparently satisfied with this resolution, the company did not seek rehearing on this particular issue.

{¶ 7} Industrial Energy Users-Ohio sought rehearing of the cost-recovery issue, however, and the commission reversed course. The commission agreed that CSP had "not demonstrated that [its] current revenue is inadequate to cover the costs associated with the generating facilities" and directed the company "to modify its [electric security plan] and remove the annual recovery of $51 million."

**{¶ 8}** CSP *then* sought rehearing, which the commission denied. It again directed CSP to file an application when it "established a plan to exercise [its] authority to sell or transfer the facilities." CSP's appeal to this court followed. The Ohio Energy Group, Office of the Ohio Consumers' Counsel ("OCC"), and Industrial Energy Users-Ohio ("IEU") intervened in support of the commission[1] (collectively, with the commission, "the appellees").

**{¶ 9}** This appeal presents two sets of issues: one set is jurisdictional; the other, substantive. We consider both.

## II. Analysis

### A. CSP Preserved Its Appeal

**{¶ 10}** The appellees raise several arguments asserting that CSP failed to preserve its right to appeal. All lack merit.

**{¶ 11}** The appellees first argue that CSP never filed a timely rehearing application regarding the denial of its request to sell or transfer the generation facilities. If that is true, then we lack jurisdiction over that issue. In its first order, the commission denied CSP's request for transfer authority, but granted cost recovery instead. CSP did not seek rehearing of this determination within 30 days of the first order. According to the commission, this means CSP forfeited its appeal of the issue. We disagree.

**{¶ 12}** Pursuant to R.C. 4903.10, a party "may apply for a rehearing in respect to any matters determined in the proceeding." Applications for rehearing must be filed within 30 days after the entry of the initial order. Id. The statute, however, provides that "[a]n order made after such rehearing, abrogating or modifying the original order, shall have the same effect as an original order." Id. Parties thus receive a new 30-day period to challenge entries on rehearing that modify earlier orders. As we have held, R.C. 4903.10 "permits an application for

---

1. Among the intervenors, only OCC and IEU filed briefs.

rehearing after *any* order." (Emphasis added.) *Senior Citizens Coalition v. Pub. Util. Comm.* (1988), 40 Ohio St.3d 329, 333, 533 N.E.2d 353.

{¶ 13} CSP preserved this issue for appeal. It had asked for one of two things concerning the generation plants: transfer authority or cost recovery. In the initial order, the commission granted the latter. This ruling was not adverse to CSP. It was given what it had asked for. There was no reason to seek rehearing.

{¶ 14} Then, in its first entry on rehearing, the commission revisited the issue and denied both transfer authority and cost recovery. This modification of the order was the first ruling adverse to CSP, and CSP applied for rehearing within 30 days of it. CSP's application was timely, and we have jurisdiction over the transfer issue.

{¶ 15} The commission's second jurisdictional argument is plainly wrong. It claims that CSP failed to challenge the "decision on the recovery of costs" in its July 31 rehearing application. On the contrary, CSP specifically stated in that document that "[i]t is unreasonable to force CSP to keep these generating units and not be able to recover any costs associated with these units." The cost-recovery issue is also preserved.

{¶ 16} Finally, and more narrowly, OCC argues that CSP failed to raise a specific argument below that it raises here—namely, that the commission cannot consider traditional rate-making principles when reviewing an electric security plan. Assuming arguendo that CSP did not raise this argument below, it was before the commission due to IEU's argument. In its first application for rehearing, IEU argued that "generation rates are no longer cost-based" and that the commission "cannot use traditional cost-based ratemaking selectively to increase rates." Because this argument was raised before the commission on rehearing, we may consider it. "R.C. 4903.10 does not require that [an] error be alleged in the *appellant's* application for rehearing; it can be in an application for rehearing filed by a *nonappellant* intervening party." (Emphases added.)

*Cincinnati Bell Tel. Co. v. Pub. Util. Comm.* (2001), 92 Ohio St.3d 177, 180, 749 N.E.2d 262. This argument therefore is properly before this court. See id. at 181.

{¶ 17} Having found that we have jurisdiction over the entire appeal, we turn to the merits.

*B. CSP Has Not Shown that the Order Was Unlawful or Unreasonable*

{¶ 18} In its only proposition of law, CSP argues that in an electric-security-plan proceeding, "it is unlawful for the Commission to deny the authority to sell or transfer [generation] assets and at the same time refuse to allow * * * an adjustment for costs associated with maintaining and operating those same assets." We disagree and hold that both decisions—the denial of CSP's request to sell and the denial of cost recovery—were reasonable and lawful.

1. The Commission Reasonably Withheld Authority to Sell

{¶ 19} The commission found that CSP's request to sell was premature. CSP had stated in its application that it had "no immediate plan to sell or transfer [the generation] facilities." It merely offered that if the commission authorized it to sell, it would "notify the Commission prior to any such transaction." The commission denied the request but instructed CSP to "file a separate application, in accordance with the Commission's rules, at the time that it wishes to sell or transfer these generation facilities."

{¶ 20} Our standard of review of this issue is deferential. R.C. 4928.17(E) provides, "No electric distribution utility shall sell or transfer any generating asset it wholly or partly owns at any time without obtaining prior commission approval." The statute empowers the commission to approve or reject transfer applications, but gives no direction to the commission concerning how it should exercise that power, effectively making the decision a discretionary one. See, e.g., *Util. Serv. Partners v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 13; *Weiss v. Pub. Util. Comm.* (2000), 90 Ohio St.3d 15, 17-18, 734 N.E.2d 775.

{¶ 21} The commission did not abuse its discretion by withholding review of CSP's request to sell until CSP submitted a concrete proposal. If nothing else, R.C. 4928.17(E) shows that the General Assembly made a policy judgment restricting the freedom of utilities to sell or transfer generation units. Although CSP plainly does not find this restriction salutary, the company did not challenge the statute, and the commission is obligated to follow its legislative mandate. In light of the General Assembly's intent that sales of generation assets receive commission scrutiny, the commission reasonably deferred reviewing CSP's request. CSP did not offer any information regarding the sale price, terms, conditions, or public impact—or even whether there would be a sale. Requiring CSP to reapply when it had such information was a reasonable application of R.C. 4928.17(E).

2. The Commission Did Not Err in Denying Cost Recovery

{¶ 22} CSP asserts that if the commission denies transfer authority, then it must grant cost recovery instead. But the company has not shown that this is true.

{¶ 23} The governing statute, R.C. 4928.17(E), does not support CSP's position that the commission must grant a rate increase if it denies a request to sell. The statute empowers the commission to approve or reject the sale of generation assets, but says nothing about cost recovery. It certainly does not guarantee cost recovery to utilities if they are denied authority to sell. Thus, CSP has not shown that the commission violated R.C. 4928.17(E) when it denied the rate increase.

{¶ 24} We further note that CSP has not shown that the commission's factual basis for denying cost recovery was unsound. The commission held that CSP had not demonstrated that its rates were inadequate to cover the costs of operating the plants. CSP adduces no evidence suggesting that this conclusion was factually inaccurate.

**{¶ 25}** Rather than argue that its rates are in fact inadequate, CSP asserts that the commission never should have considered CSP's cost of service. The commission's "reference to the adequacy of current revenues," CSP claims, "is uniquely based in the traditional cost-of-service/rate of return on investment rate making concepts of R.C. Chapter 4909" and "has no place in evaluating" an electric security plan.

**{¶ 26}** If it is true that cost of service "has no place" in evaluating an electric security plan, then why does CSP ask for a rate to "recover the costs" of running these facilities? This question need not be answered, because CSP's argument lacks merit. CSP cites no authority that expressly prohibits the commission from considering cost of service or adequacy of revenue when reviewing an electric security plan. On the contrary, numerous subsections of the electric-security-plan statute implicitly require the commission to consider certain costs. See R.C. 4928.143(B)(2)(a) through (d) and (f) through (i). Whether the commission generally *must* consider cost of service we need not and do not decide. We simply hold that nothing in the statute generally *forbids* such consideration.

**{¶ 27}** CSP seems to assert that the standard to be applied here does not involve any consideration of cost. It argues in its brief that "[t]he proper standard under [Am.Sub.] SB 221 [the bill that enacted R.C. 4928.143] for determining whether to revoke the previously authorized recovery of revenue related to these generating facilities would have been for the Commission to decide whether, with the allowance of the revenue recovery, the [electric security plan], in the aggregate, was not more favorable than the result expected under [a market-rate offer] at the time the Commission issued its original Opinion and Order." As we understand this sentence, CSP is saying that the commission cannot reduce the rates set forth in an electric security plan on rehearing unless the plan's rates exceed expected market rates. Put differently, if the plan's rates are under market,

the commission may not make them any lower, for any reason. But the statute contradicts that claim. The electric-security-plan statute expressly allows the commission to modify plans, and it does not prohibit modifications based on the utility's cost of service. R.C. 4928.143(C)(1). Moreover, while it is true that the commission must approve an electric security plan if it is "more favorable in the aggregate" than an expected market-rate offer, id., that fact does not bind the commission to a strict price comparison. On the contrary, in evaluating the favorability of a plan, the statute instructs the commission to consider "pricing *and all other terms and conditions*." (Emphasis added.) Id. Thus, the commission must consider more than price in determining whether an electric security plan should be modified.

{¶ 28} We intimate no opinion on whether R.C. 4928.143 would have permitted the recovery of the costs that CSP sought in this case. We simply hold that in this case, the commission acted reasonably and lawfully when it denied them.

### III. Conclusion

{¶ 29} For the foregoing reasons, we have jurisdiction to consider CSP's appeal. Having considered the parties' arguments, we affirm the order.

Order affirmed.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Porter, Wright, Morris & Arthur, L.L.P., and Daniel R. Conway; and Steven T. Nourse and Matthew J. Satterwhite, for appellant.

Michael DeWine, Attorney General, and William L. Wright, Werner L. Margard III, Thomas G. Lindgren, and John H. Jones, Assistant Attorneys General, for appellee Public Utilities Commission of Ohio.

Janine L. Migden-Ostrander, Consumers' Counsel, and Terry L. Etter and Maureen R. Grady, Assistant Consumers' Counsel, for intervening appellee, Ohio Consumers' Counsel.

McNees, Wallace & Nurick, L.L.C., Samuel C. Randazzo, and Joseph E. Oliker, for intervening appellee, Industrial Energy Users-Ohio.

_____